IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| **Plaintiff,** | : | CASE NO. 2:23-cr-241 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| DUSTIN C. SUTTON, | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter comes before this Court on Defendant Dustin C. Sutton's motion, and amended motion, to dismiss his Indictment as unconstitutional under the Second Amendment (ECF Nos. 22, 30). For the reasons stated below, the Motions to Dismiss (ECF Nos. 22, 30) are **DENIED**.

**I.    BACKGROUND**

**A. State Felony Convictions**

Between 2003 and 2021, Mr. Sutton has been charged and convicted of several criminal felonies in the Fairfield County Court of Common Pleas.[1] In 2004, he was convicted of illegal

---

[1] The online docket records maintained by the Fairfield County Court of Common Pleas, which pertain to Mr. Sutton's criminal history, can be accessed at: https://eservices.fairfieldcountycpcourt.org/eservices/. This Court takes judicial notice of these records. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[I]t is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record' . . . ." (citation omitted))). To the extent the publicly-available state court records are not clear on the precise dates or facts surrounding the felonies with which Mr. Sutton was ultimately convicted, this Court relies on the Statement of Facts attached to the written plea agreement filed with this Court. (*See* ECF No. 24, 7–10). By signing the agreement, Mr. Sutton verified that he "carefully reviewed the Statement of Facts with [his] attorney" and "acknowledge[d] that it is true and correct." (ECF No. 24, at 10). To be sure, the plea agreement was not entered, but this Court may still take judicial notice of the facts recited therein as part of its own record. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n. 2 (6th Cir. 1977). *See also Frankfurt v. Mega Ent. Grp. II*, No. 15 CV 667, 2018 WL 488258, at *2 n. 5 (N.D. Ill. Jan. 19, 2018) (finding "no authority" to suggest that Rule of Evidence 410, which prohibits the admission of a plea agreement that was later withdrawn, "excludes plea agreements that were not withdrawn" and taking "[j]udicial notice . . . of facts recited in a plea agreement" (citing *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) ("Admissions—in a guilty plea, as elsewhere—are admissions; they bind a party; and the veracity safeguards surrounding a plea agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition.") (citation omitted))).

manufacturing of drugs, a felony of the second degree under Ohio Rev. Code § 2925.04, as well as illegal assembly or possession of chemicals for the manufacturing of drugs, a felony of the third degree under Ohio Rev. Code § 2925.041. *See State v. Sutton*, 2003 CR 00292 (March 8, 2004 Entry). In 2012, he was convicted of tampering with evidence, a felony of the third degree under Ohio Rev. Code § 2921.12 (A)(2); theft, a felony of the fourth degree under Ohio Rev. Code § 2913.02; and burglary, a felony of the fourth degree under Ohio Rev. Code § 2911.12(B). *See State v. Sutton*, Case Nos. 2012 CR 00227 & 2012 CR 00340 (September 13, 2012 Entry). In March 2017, he was convicted of possessing heroin, a felony of the fourth degree under Ohio Rev. Code § 2925.11(C)(6)(A). *See State v. Sutton,* 2016 CR 00307 (March 28, 2017 Entry). And, finally, in May 2020, Mr. Sutton was convicted of having weapons while under a disability, a felony of the third degree under Ohio Rev. Code § 2923.13, and improper handling of firearms in a motor vehicle, a felony of the fourth degree under Ohio Rev. Code § 2923.16. *See State v. Sutton*, 2019 CR 00579 (May 12, 2020 Entry).

### B. Federal Proceedings

On December 19, 2023, a federal grand jury returned an indictment against Mr. Sutton on seven firearm and drug-related charges: three felon-in-possession counts, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Counts 1, 4, 6); three narcotics distribution counts, in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(1)(C) (Counts 2, 5, 7);[2] and one count of attempted narcotics distribution (of methamphetamine), in violation 21 U.S.C. §§ 841(a)(l), 841(b)(1)(C), 846 (Count 3). (*See* ECF No. 4).

---

[2] Count 2 charged Mr. Sutton with distribution of cocaine; Count 7 charged him with distribution of methamphetamine; and Count 5 charged him with distribution of a mixture containing methamphetamine, a mixture containing 3,4-methylenedioxymethamphetamine (MDMA / Ecstasy), a mixture containing lysergic acid diethylamide (LSD), and a mixture containing psilocin (psychedelic mushrooms). (*See* ECF No. 4).

2

With respect to the three felon-in-possession counts, the Indictment states:

1. On or about November 1, 2023, in the Southern District of Ohio, the defendant . . . knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, specifically, a Tisas Zigana PX-9, 9mm caliber pistol . . . said firearm having been shipped and transported in interstate or foreign commerce.

4. On or about November 1, 2023, in the Southern District of Ohio, the defendant . . . knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, specifically, a Raven Arms, .25 caliber pistol . . . said firearm having been shipped and transported in interstate or foreign commerce.

6. On or about December 4, 2023, in the Southern District of Ohio, the defendant . . . knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed one or more firearms, specifically: a Walther IWI Uzi, .22 caliber pistol, . . . a Romarm/Cugir, Draco, 9mm caliber pistol, . . . a DPMS, AR-15, .223 caliber rifle, . . . and a Remington Arms, 870 Express Magnum, 12-gauge shotgun, . . . said firearms having been shipped and transported in interstate or foreign commerce.

(*See* ECF No. 4, ¶¶ 1, 4, 6 (Counts 1, 4, 6)). Mr. Sutton was arraigned the following day and ordered detained pending trial, set to begin on February 26, 2024. (*See* ECF Nos. 12, 13). On February 2, 2024, the parties jointly moved for a continuance, explaining that they "need additional time to provide supplemental discovery and negotiate a possible resolution." (ECF No. 16). Granting the request, this Court continued the trial date to July 15, 2024. (ECF No. 21).

On February 24, 2024, Mr. Sutton filed a motion to dismiss, challenging the felon-in-possession charges under 18 U.S.C. § 922(g)(1) as unconstitutional under the Second Amendment. (*See* ECF No. 22). After briefing on the motion was complete, the Government, on May 16, 2024, filed a written plea agreement signed by Mr. Sutton, his counsel, and the prosecuting attorney. (ECF No. 24). Under the agreement, Mr. Sutton agreed to plead guilty to Count 1 (felon in possession of a firearm) and Count 7 (distribution of methamphetamine), while the Government

3

agreed "to the dismissal of Counts Two through Six . . . at the entry of the final judgment." (*Id.* at 4, ¶ 9).

On May 24, 2024, the parties appeared before this Court for a change of plea hearing. But as the Court began its plea colloquy with Mr. Sutton, defense counsel seems to have realized that Mr. Sutton's motion to dismiss was still pending. Accordingly, he requested that the plea hearing be postponed until the motion to dismiss is resolved. As he explained at the hearing, Mr. Sutton's plea negotiations with the Government had apparently overlooked the constitutional issues raised in the motion to dismiss and thus, the resulting plea agreement filed with this Court did not preserve Mr. Sutton's appellate rights with respect to those issues. This Court granted the continuance request and subsequently vacated the trial scheduling order pending further plea negotiations and resolution of the motion to dismiss. (ECF No. 28).

After the plea hearing—but before this Court ruled on the motion to dismiss—the Sixth Circuit issued a decision that upheld the constitutionality of 18 U.S.C. § 922(g)(1) both "on its face and as applied to dangerous people." *See United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024). In light of the new controlling authority, this Court ordered supplemental briefing on Mr. Sutton's constitutional challenges. (ECF No. 29). Both parties duly complied (ECF Nos. 30, 31), and this matter is now ripe for resolution.

## II. LEGAL STANDARD

Under the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "When a party brings properly and timely a pretrial motion under Rule 12, "the district court may make preliminary findings of fact necessary to decide questions of law . . . as long as the court's findings on the motion do not invade the province of the jury." *United States v. Craft,* 105 F.3d 1123, 1126 (6th Cir.1997) (citing *United States v. Jones,* 542 F.2d 661, 664–65

4

(6th Cir.1976)). Thus, "Rule 12 vests the district court with the authority to 'determine [preliminary] issues of fact in such a manner as the court deems appropriate.'" *Id.* (quoting Notes of Advisory Committee to the 1975 Amendments to Fed. R. Crim. P. 12).

When considering a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the indictment is valid on its face." *Costello v. United States,* 350 U.S. 359, 363 (1956); *see also United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014), *aff'd*, 795 F.3d 511 (6th Cir. 2015)

### III. LAW & ANALYSIS

Mr. Sutton seeks dismissal of the three counts in the Indictment charging him under 18 U.S.C. § 922(g)(1) with possession of a firearm after sustaining a felony conviction. He argues that Section 922(g)(1) is unconstitutional "on its face" and "as applied" to him. The Sixth Circuit has explained the distinction between facial and as-applied challenges as follows: "[I]f a statute is unconstitutional on its face, the [Government] may not enforce the statute under any circumstances." *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997). By contrast, an as-applied challenge is "fact-specific, depending on the unique circumstances of the individual defendant." *See Williams*, 113 F.4th at 660; *see also Mathews v. Ohio Pub. Emps. Ret. Sys.*, 91 F. Supp. 3d 989, 996 (S.D. Ohio 2015) (explaining that the "burden in an as-applied challenge is different from that in a facial challenge"; the movant in an as-applied "contends that application of the statute in the particular context in which he has acted . . . would be unconstitutional") (citation and internal quotation marks omitted)).

This Court first addresses Mr. Sutton's facial challenge to the constitutionality of the felon-in-possession provision before turning to his as-applied challenge.

5

### A. Facial Challenge

As the Supreme Court and the Sixth Circuit frequently caution: "A facial challenge is the 'most difficult challenge to mount successfully' because it requires a defendant to 'establish that *no* set of circumstances exists under which the Act would be valid.'" *See Williams*, 113 F.4th at 643 (emphasis added) (quoting *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (internal quotation marks and citation omitted)); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987)). The fact that a provision "might operate unconstitutionally under some conceivable set of circumstances" is "insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745. To prevail, the Government "need only demonstrate that [the statute] is constitutional in *some* of its applications." *Rahimi*, 144 S. Ct. at 1899 (emphasis added); *see Williams*, 113 F.4th at 643 ("[A] facial challenge will fail if § 922(g)(1) is constitutional in even just one of its applications.").

Mr. Sutton argues that because 18 U.S.C. § 922(g)(1) permanently disarms individuals convicted of felonies,[3] it infringes on his right to armed self-defense under the Second Amendment. This right is, of course, "among the fundamental rights necessary to our system of ordered liberty," *McDonald v. Chicago*, 561 U.S. 742, 778 (2010). But the right "is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Indeed, time and again, the Supreme Court has made clear that its Second Amendment jurisprudence should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and that such laws are

---

[3] The statute states, in relevant part:

> It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

6

"presumptively lawful." See *Heller*, 554 U.S. at 626–627; *McDonald*, 561 U.S. at 786 (reiterating that regulations prohibiting possession of firearms by felons are lawful). See also *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 72 (2022) (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id*. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." (quoting *McDonald*, 561 U.S. at 786)); *id*. at 129 (Breyer, J., joined by Kagan, J. and Sotomayor, J., dissenting). ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding [prohibiting felons from possessing firearms]."); *Rahimi*, 144 S. Ct. at 1901 ("[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse . . . ." (citing *Heller*, 554 U.S. at 626)); *id.* at 1902 (noting that "prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'") (quoting *Heller*, 554 U.S. at 626, 627, n.6)); *id*. at 1923 (Kavanaugh, J., concurring) (noting that *Heller* "recognized a few categories of traditional exceptions to the [Second Amendment] right" and indicated that "longstanding prohibitions on the possession of firearms by felons . . . are presumptively constitutional").

In *Bruen,* the Supreme Court set forth a two-step analytical framework "rooted in the Second Amendment's text, as informed by history" to analyze the constitutionality of firearm restrictions. See 597 U.S. at 19. First, a court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If so, "the Constitution presumptively protects that conduct" and the Government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. To

satisfy this standard, the Government need only "identify a well-established and representative historical analogue, not a historical twin." *Id*. at 30.

Although *Bruen* addressed civil rather than criminal firearms regulations, the Supreme Court has since applied *Bruen*'s framework to reject a Second Amendment challenge to 18 U.S.C. § 922(g)(8), a sister provision of the felon-in-possession law that Mr. Sutton challenges here. *See Rahimi*, 144 S. Ct. 1889. In *Rahimi*, the Court considered a constitutional challenge to Section 922(g)(8), which prohibits a person subject to a domestic violence restraining order from possessing a firearm. 18 U.S.C. § 922(g)(8). Undertaking the *Bruen* analysis, the *Rahimi* Court surveyed the relevant historical record from English and early American law and had "no trouble concluding" that § 922(g)(8) is constitutional. *Rahimi*, 144 S. Ct. at 1902. As the Court explained, the nation's "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id*. at 1902.

Applying *Bruen and Rahimi,* the Sixth Circuit in *Williams* addressed the constitutionality of the contested provision here—18 U.S.C. 922(g)(1)—both on its face and as applied to particular defendants. *See* 113 F.4th 637. Consistent with *Bruen*, the court first inquired into whether the Second Amendment's plain text covers a felon's possession of a firearm. *Id*. Noting that nothing in the Second Amendment's text "draws a distinction among the political community between felons and non-felons[,]" the Sixth Circuit concluded that a felon's possession of a firearm is presumptively protected and thus turned to the Government to show that the provision is "consistent with the principles underpinning our historical regulation of firearms." *Id*. at 650.

At step two of the *Bruen* test, the Sixth Circuit thoroughly examined the historical landscape of felon disarmament laws and observed that "governments in England and colonial America long disarmed groups that they deemed to be dangerous" but noted that such individuals—historically speaking—had the opportunity to "demonstrate that their particular

8

possession of a weapon posed no danger to peace." *Id*. at 657. Accordingly, government disarmament of "groups of people, like felons, whom the legislature believes are dangerous" is constitutional "so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Id*. at 663. Because "most applications" of Section 922(g)(1) involve dangerous felon-defendants, the Sixth Circuit concluded that the provision was constitutional on its face. *See id*. at 657; *see also Rahimi*, 144 S. Ct. at 1898 (facial constitutional challenge "requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid'") (quoting *Salerno*, 481 U.S. at 745 (noting that to be facially unconstitutional, a statute must be unconstitutional in every circumstance in which it could be applied))).

Mr. Sutton does not dispute *Williams*' holding that Section 922(g)(1) is constitutional on its face. Rather, he takes issue with the Sixth Circuit's "fail[ure] to meaningfully engage" with *Bruen*'s requirement "that the contemporary regulation impose a 'comparable burden' on an individual's right to bear arms." (ECF No. 30, at 2 (quoting *Bruen*, 597 U.S. at 29)). According to Mr. Sutton, *Williams* heightens the burden of proving non-dangerousness in a manner inconsistent with the nation's history. (*See* ECF No. 30, at 6). As he explains:

> [T]he burden of proving one's non-dangerousness was historically light: libelers could "disavow their libel," *Williams*, 113 F.4th at 652; loyalists could show they are "friendly" to the "fledgling revolutionary project," *id*. at 654; Catholics could "declare loyalty to the crown," *id*. at 651; freedman could present "five or more respectable and judicious citizens' [to] certify that [the] freedman was a 'person of fair character.'" *Id*. at 656. In each historical example, individuals challenging firearms restrictions could prove their peacefulness through forward-looking conduct. By requiring district courts to focus (in some cases, exclusively) on prior convictions as the basis for the dangerousness determination, *Williams* proposed a backward-looking test that strips most felons of their ability to ever prove their non-dangerousness.

9

(*Id.*). Mr. Sutton further maintains that, even if contemporary restrictions of firearm possession by convicted felons are justified by some historical counterparts, the Sixth Circuit's analysis in *Williams* still falters because the decision does not explain *how* the burden of permanent disarmament imposed by felon-in-possession provision is "comparably justified" under *Bruen*. (*See* ECF No. 30, at 6 ("[T]he burden § 922 (g)(1) imposes on people convicted of a felony—a permanent ban on their right to possess a firearm—is a heavier burden than those imposed by § 922 (g)(1)'s historical analogues.").[4]

But mere disagreement with the *Williams* analysis is not sufficient to compel this Court to abandon binding precedent. *See United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023) (a Sixth Circuit decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting *en banc* overrules the prior decision") (internal citations and quotation marks omitted)); *see also Kimble v. Entm't*, LLC, 135 S. Ct. 2401, 2409 (2015) ("[A]n argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent."). Nor can Mr. Sutton "powerfully convince[]" this Court that departure from *Williams* is warranted. *See Hollis v. Erdos*, 480 F. Supp. 3d 823, 832 (S.D. Ohio 2020) ("A district court should only deviate from [binding] authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.") (internal citations and quotation marks omitted)).

To be clear, even if "Section [922(g)(1)] is by no means identical to these founding era regimes, [] it does not need to be." *Rahimi*, 144 S. Ct. at 1901; *see also Bruen*, 597 U.S. at 30

---

[4] *But see Anderson*, 104 Cal. App. 5th at 598, 324 Cal. Rptr. at 676 ("[W]hile defendant is correct that, historically, disarmament as a criminal penalty was sometimes temporary, it does not appear to have always been that way . . . . [C]ategorical disarmament laws imposed permanent prohibitions []at least while the laws themselves lasted[].").

("[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). Indeed, "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at 1897–98. As the Supreme Court noted, *Rahimi*'s study of similar historical firearm regulations only "confirm[s] what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed," *id.* at 1901.[5]

Because controlling circuit authority forecloses Mr. Sutton's facial challenge to the constitutionality of Section 922(g)(1), his motion to dismiss the indictment on facial constitutional grounds must be rejected.

## B. As-Applied Challenge

Unlike a facial challenge, when a defendant argues that a statute is unconstitutional "as applied" to him, "the [Government] may continue to enforce the statute in different circumstances where it is not unconstitutional[.]" *Mathews*, 91 F. Supp. 3d at 996. Although Section 922(g)(1) is facially constitutional, *Williams* left open the possibility for a defendant to succeed on an as-applied challenge. To prevail on such a challenge, the defendant bears the burden of proving his non-dangerousness so as to "fall[] outside of § 922(g)(1)'s constitutionally permissible scope[.]" *See* 113 F.4th at 657.

To guide a district court's dangerousness determination, the Sixth Circuit divided crimes into three categories. The first category involves crimes against the person, such as "murder, rape,

---

[5] It is worth noting that one court analyzing *Rahimi* observed that "[n]o historical evidence suggested the founding generation had any familiarity with domestic violence restraining orders, let alone a practice of disarming those subject to them." *People v. Anderson*, 104 Cal. App. 5th 577, 586, 324 Cal. Rptr. 3d 661, 666 (Cal. Ct. App. 2024).

11

assault, and robbery." *Id*. at 658. A history of such violent crimes can provide "strong evidence that an individual is dangerous." *Id*. The second category involves crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary. *Id*. at 659. Convictions for these crimes will often "justify a finding of danger." *Id*. The final category involves "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id*. While the analysis for crimes in this category can be "challenging," district courts should "have no trouble concluding that many of these crimes don't make a person dangerous." *Id*.

Importantly, regardless of the category, the Sixth Circuit emphasized that courts need not "draw bright categorical lines" with respect to a defendant's crimes. *Id.* at 660. Instead, a court must make "fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction." *Id*. at 663. This dangerousness inquiry, moreover, is not cabined to "just the specific felony underlying [the defendant's] section 922(g)(1) prosecution." *Id*. at 659. Rather, the analysis "necessarily requires considering the individual's entire criminal record." *Id*. at 657. As such, when assessing a defendant's dangerousness, "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions." *Id*. at 660.

Before undertaking the dangerousness analysis here, this Court, like another district court in this Circuit, notes that "[t]he procedural context of *Williams* is not a perfect fit for this case because *Williams* involved a post-sentencing challenge to a § 922(g)(1) conviction, while this case involves a pre-trial motion to dismiss the indictment . . . ." See *United States v. Hines*, No. 3:22-CR-157, 2024 WL 4252569, at *3 (N.D. Ohio Sept. 12, 2024). Accordingly, "no facts have yet been found by a judge or jury." *Id.* Nor does this Court "have the advantage of a thorough presentence report to inform [its] analysis." *Id.* And although this Court treats the allegations in

12

Mr. Sutton's Indictment as true at this stage, the Sixth Circuit itself recognized that charges brought under § 922(g)(1) do not require the Government to list the underlying felony in the indictment. *See Williams*, 113 F.4th at 662 ("Nor is it a problem—statutory or evidentiary—that the government failed to list a specific predicate felony in [the] indictment."). Accordingly, as explained earlier (*see* Section I.A. n.1, *supra*)*,* this Court relies on the judicial filings in this case and the publicly available state court records to determine whether Mr. Sutton "has met his burden to demonstrate that he is not dangerous." *Williams*, 113 F.4th at 657.

Here, Mr. Sutton argues that "[t]he most serious crime" in his record is the 2012 conviction for burglary, a fourth-degree felony under Ohio Rev. Code § 2911.12(B). The provision, in its entirety, provides: "No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." Ohio Rev. Code § 2911.12(B). According to Mr. Sutton, a conviction under this statute is not probative of dangerousness because the crime does not require criminal intent; does not pose a threat of danger or to the community; and does not "carry the same implication of contemplated future violence." (ECF No. 30, at 8–9). Mr. Sutton therefore urges that his burglary conviction falls outside the first and second *Williams* categories.

The Government, on the other hand, maintains that Mr. Sutton's burglary conviction "falls squarely within *Williams'* 'second category of crimes' that 'put someone's safety at risk, and thus, justify a finding of danger.'" (ECF No. 31, at 8 (quoting *Williams,* 113 F.4th at 659)). As the Government explains, because a conviction under Ohio Rev. Code § 2911.12(B) requires trespass in a habitation "when any person . . . is present or likely to be present," the offense creates "the possibility of a violent confrontation between the offender and occupant" that *Williams* recognized. (*See* ECF No. 31, at *8* (quoting *Williams*, 113 F.4th at 659 (citation omitted))).

13

The "judicially noticeable information" on the Fairfield County Court of Common Pleas dockets does not provide the underlying facts surrounding Mr. Sutton's burglary conviction. Nonetheless, it is Mr. Sutton's burden to show that "the specific circumstances" of his § 2911.12(B) offense suggest a lack of dangerousness. He has not done so here. Because a conviction under § 2911.12(B) requires a defendant to have used "force, stealth, or deception" to enter a habitation "when any person . . . is present or likely to be present," this Court concludes that the offense carries the possibility that it would put a person's physical safety at greater risk so as to be probative of dangerousness. *See Williams*, 113 F.4th at 659 (explaining that crimes carrying "the possibility of a violent confrontation" justify a finding of dangerousness) (internal citation and quotation marks omitted).

Moreover, even if this Court agreed with Mr. Sutton that his burglary conviction is not probative of dangerousness, his "entire criminal record" suffices to show that he may be disarmed consistent with the Second Amendment. *See Williams*, 113 F.4th at 663. In addition to burglary under § 2911.12(B), Mr. Sutton was also convicted of theft at the time which, under Ohio law, is the knowing obtaining or exertion of control over the property or services of another person without or beyond the scope of that person's consent, by deception, by threat, or by intimidation. *See* Ohio Rev. Code § 2913.02. Mr. Sutton has not indicated whether his theft conviction was the kind "more attenuated from the risk of physically harming another person—such as an act exceeding the boundaries of consent to use property or an act of deception—or, instead, behavior that put a person's physical safety at greater risk, such as a threat or an act of intimidation." *See Hines*, 2024 WL 4252569, at *4. Indeed, he does not address his theft conviction at all. Without any evidence from Mr. Sutton to prove otherwise, this Court finds that a theft conviction, like the burglary conviction, entails a possible violent confrontation that is indicative of dangerousness. *See Williams*, 113 F.4th at 659.

Finally, perhaps the most probative of Mr. Sutton's dangerousness are his 2020 convictions for having weapons while under a disability, a felony of the third degree under Ohio Rev. Code § 2923.13, and improper handling of firearms in a motor vehicle, a felony of the fourth degree under Ohio Rev. Code § 2923.16. While the underlying facts may diminish the seriousness of these offenses, this Court concludes that "irresponsible firearms behavior" necessarily "endangers the community at large and heightens the risk of a violent confrontation." *See Hines*, 2024 WL 4252569, at *5 (citing *Williams*, 113 F.4th at 659 (internal citations and quotation marks omitted)). As with his theft conviction, Mr. Sutton makes no effort to explain why these firearms-related crimes would not bring him within § 922(g)(1)'s constitutionally permissible scope.

To be sure, Mr. Sutton's criminal record may not be as serious as the one the Sixth Circuit considered in *Williams*. There, the criminal defendant was convicted of attempted murder involving a firearm, two felony counts of aggravated robbery (which involved a deadly weapon), and a prior felon-in-possession offense. *Williams*, 113 F.4th at 662. But even if none of Mr. Sutton's prior convictions, standing alone, demonstrates the dangerousness contemplated by *Williams*, this Court's dangerousness conclusion is guided by judicial common sense, including its own "informed judgment about how criminals commonly operate." *Williams*, 113 F.4th at 660. Viewed as a whole, and together with the allegations in the Indictment, Mr. Sutton's record shows a pattern of escalating dangerous conduct that increasingly involves more serious drugs and firearms: his burglary and theft convictions occurred over a decade ago, whereas his state drug-related and firearm convictions occurred in 2017 and 2020. *See Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination."); *United States v. Goins*, No. 23-5848, ⸺ F.4th ⸺, ⸺, 2024 WL 4441462, at *2 (6th Cir. Oct. 8, 2024) (defendant's "repeated actions demonstrate[ ] a likelihood of future dangerous conduct").

Accordingly, this Court concludes that Mr. Sutton is sufficiently "dangerous" to be prosecuted under 18 U.S.C. § 922(g)(1) consistent with the Second Amendment. His as-applied challenge therefore fails.

## IV. CONCLUSION

For the reasons set forth above, Mr. Sutton's Motions to Dismiss (ECF Nos. 22, 30) are **DENIED**. The parties are **ORDERED** to meet and confer and file a Joint Status Report on or before **November 25, 2024**, advising this Court as to the current status of the case. Specifically, the report shall indicate (1) whether the parties are prepared to proceed to trial, and, if so, list three potential trial dates; (2) whether the parties believe the case will result in a renewed, negotiated plea agreement, and, if so, whether additional time is needed for plea negotiations; and/or (3) whether the parties are prepared for a change-of-plea hearing.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  November 18, 2024**